JAMES WHEATON, JR., RESPONDENT, v. ROLLA WELLS, RECEIVER OF THE UNITED RAILWAYS COMPANY OF ST. LOUIS, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals.    Opinion filed June 21, 1927.

**Street Railroads—Negligence—Collision—Automobile Driver Injured—Contributory Negligence.** In an action to recover damages for personal injuries resulting from a collision between an automobile which plaintiff was driving and defendant's street car, plaintiff's automobile having been struck by a street car going south on a northbound street car track as he was making a left-hand turn at a street intersection, evidence reviewed and **held** not to convict the plaintiff of contributory negligence as a matter of law because he was not sufficiently wary and alert to avoid the dangerous trap created solely by the gross negligence of the defendant.

*Corpus Juris-Cyc. References: Street Railroads, 36Cyc, p. 1622, n. 27; p. 1629, n. 63, 64.

Appeal from the Circuit Court of the City of St. Louis.—Hon. H. A. Rosskopf, Judge.

AFFIRMED.

*Charles W. Bates, T. E. Francis* and *John F. Evans* for appellant.

(1) The trial court erred in refusing to direct a verdict for defendant, for the following reasons: (a) Plaintiff was guilty of contributory negligence as a matter of law in driving on the track directly in front of the approaching street car, and was, therefore, not entitled to recover under any theory of primary negligence. Pienieng v. Wells, 271 S. W. 62; Gubernick v. United Railways Co., 217 S. W. 33; Keele v. Railroad, 258 Mo. 621; Sanguinette v. Railroad Co., 196 Mo. 466; Kelsay v. Railroad Co., 129 Mo. 362; Hayden v. Railroad Co., 124 Mo. 566; Epstein v. Wells, 284 S. W. 845; Ross v. Wells, 255 S. W. 952; Rose v. Wells, 266 S. W. 1015; Koch & Son v. U. R. Co., 258 S. W. 37. (b) The fact that plaintiff assumed that the car was moving in the opposite direction, because it was running on the northbound track, does not take the case out of the

contributory negligence rule, for the reason that he had ample opportunity of informing himself of the true state of facts before he drove into. a position of danger. One will not be permitted to rely blindly upon an assumption, no matter how reasonable in the first instance, to the extent of failing to take any further precaution for his own safety. Mockowik v. Railroad, 196 Mo. 571; Epstein v. Wells, 284 S. W. 845; Paul v. Railroad, 152 Mo. App. 577; Paul v. Railroad, 160 Mo. App. 599. (c) The last chance or humanitarian doctrine is not in the case. 1. The assignment of negligence purporting to cover this issue was withdrawn from the consideration of the jury. Instruction No. 5. 2. The evidence failed to show that, after plaintiff and his automobile reached a position of imminent peril, the motorman had the present ability, with the means at hand, to avert the collision. Banks v. Morris, 302 Mo. 254. 3. The testimony of witness Hagerhorst as to relative distances and speeds is so opposed to known physical laws as to be utterly unworthy of belief, and a verdict based thereon will not be upheld by this court. Roseman v. U. R. Co., 251 S. W. 104, and cases cited; Schmitt v. Standard Oil Co., 221 S. W. 389; Ray v. Railroad, 232 S. W. 268; Spohn v. Railroad, 87 Mo. 74. (2) The court erred in giving and reading to the jury plaintiff's instruction No. 1, which directed a verdict for violation of the speed ordinance, for the reason that plaintiff's contributory negligence as a matter of law was a complete bar to recovery under this theory of negligence. Cases cited under point 1-a and 1-b. (3) The court erred in giving and reading to the jury plaintiff's instruction No. 3, which directed a verdict for violation of the Vigilant Watch Ordinance, for the reason that plaintiff's contributory negligence as a matter of law was a complete bar to recovery under this theory of negligence. Cases cited under point 1-a and 1-b. (4) The court erred in refusing to give and read to the jury defendant's proposed instruction No. 2, which sought to withdraw from the consideration of the jury the assignment of negligence based on the violation of the speed ordinance, for the reason that plaintiff's contributory negligence as a matter of law was a complete bar to recovery on this issue. Cases cited under point 1-a and 1-b. (5) The court erred in refusing to give and read to the jury defendant's proposed instruction No. 3, which sought to withdraw from the consideration of the jury the assignment of negligence based on the violation of the Vigilant Watch Ordinance, for the reason that plaintiff's contributory negligence as a matter of law was a complete bar to recovery on this issue. Cases cited under point 1-a and 1-b.

*Albert Wiebe* and *N. Murry Edwards* for respondent.

(1) Under the evidence, plaintiff was not guilty of contributory negligence as a matter of law. His negligence, if any, was a ques-

tion for the jury. Hale v. St. Joe. Ry. Co., 287 Mo. 449; Stussy v. Kansas City Rys. Co., 228 S. W. 531; Keeney v. Wells, 257 S. W. 1075; Alexander v. Traction Co., 215 Mo. App. 427; Wolfe v. Hines, 224 S. W. 173; Clayton v. Kansas City Rys. Co., 234 S. W. 268; Friedman v. United Rys. Co. of St. Louis, 254 S. W. 556. (2) Defendant's motorman testified that the street car was traveling between eighteen and twenty miles per hour; that he didn't attempt to stop the same until he was within nine feet of plaintiff's automobile. The street car struck the left hind rear wheel and fender of the automobile about three and one-half feet from the rear as it was crossing the track. There was a casual connection between the excessive speed of the street car and the collision. It can be inferred that had the street car been operated within the speed ordinance of fifteen miles per hour or had its speed been slackened the slightest, the collision would not have occurred. It was, therefore, not error to submit the violation of the fifteen-mile per hour speed ordinance to the jury. Keeney v. Wells, 257 S. W. 1075; Friedman v. United Rys. Co. of St. Louis, 254 S. W. 556. (3) The motorman testified that he could have seen plaintiff's automobile one hundred feet away but that he didn't see it until it was within nine feet of the street car and that he didn't put on his brakes and attempt to stop the street car until he saw it; that at the rate of twenty miles per hour, the speed at which he was traveling, he could have stopped the street car within forty or fifty feet. Plaintiff and other witnesses testified that plaintiff drove straight across Kingshighway without stopping and that there was no obstruction between the street car and plaintiff's automobile. There was evidence to support the question of the violation of the vigilant watch ordinance and the trial court did not err in submitting the same to the jury. Hale v. St. Joe. Ry. Co., 287 Mo. 518, 519; Friedman v. United Rys. Co. of St. Louis, 254 Mo. 258. (4) Defendant's motorman could have seen plaintiff's automobile one hundred feet away and going at the rate of twenty miles per hour, the speed at which he was traveling, he could have stopped the street car within forty or fifty feet. The street car struck the rear of the automobile. If the motorman had applied his brakes and slackened the speed of the street car a few seconds sooner, the automobile would have cleared the tracks and the accident would not have happened. There was a case made for the jury under the humanitarian doctrine and the court erred in withdrawing this assignment of negligence from the jury at the appellant's request. Huckschold v. United Rys. Co. of St. Louis, 234 S. W. 1072, 1074; Hale v. St. Joe. Ry. Co., 287 Mo. 499; Frankel v. Hudson, 271 Mo. 495.

SUTTON, C.—This is an action to recover damages for personal injuries resulting from a collision between a Ford automobile, which

plaintiff was driving, and defendant's street car, occurring at the intersection of Berthold Avenue and Kingshighway Boulevard, in the city of St. Louis. The trial, with a jury, resulted in a verdict and judgment for plaintiff for $2500, and defendant appeals.

Berthold Avenue runs east and west, and Kingshighway runs north and south. Kingshighway is sixty-eight feet wide from curb to curb. The defendant maintains two street car tracks on Kingshighway. These tracks are located on the east side of the street. Southbound street cars are operated on the west track, and northbound cars on the east track. The distance between the west curb of the street and the west rail of the southbound track is forty-two feet. The distance between the rails of the southbound track is four feet ten inches. The distance between the east rail of the southbound track and the west rail of the northbound track is five feet four inches. The distance between the rails of the northbound track is four feet ten inches, and the distance between the east rail of the northbound track and the east curb of the street is eleven feet. The spaces between the west curb and the west rail of the southbound street car track, and between the east rail of the northbound track and the east curb, are paved with asphalt. The space within the street car tracks is paved with brick. At the time of the collision, the space west of the tracks was used for both southbound and northbound traffic, and the space east of the tracks was used for northbound traffic.

· On August 10, 1923, at about 8:15 in the evening, plaintiff drove east on Oakland Avenue to Kingshighway. No left turn was allowed on Kingshighway, and plaintiff drove south on Kingshighway to Berthold Avenue in order to make a left turn. On arriving at Berthold Avenue he undertook to make a left turn to go north on Kingshighway east of the street car tracks, and in making this turn his automobile was struck by a street car going south on the northbound street car tracks, and he thus received the injuries for which he sues. The northbound track was being used at that time for southbound street cars on account of a traffic emergency.

Plaintiff testified that just as he got to Berthold Avenue he threw out his left hand to signal that he was going to make a turn; that when he threw out his hand, he made his left turn in the intersection and stood there a second to watch the traffic in front of him and behind him; that when he got a clear opening, he decided to pull across Kingshighway east, and as he aimed to pull across Kingshighway east, he saw the street car; that when he viewed for traffic each way, the street car appeared to him as if it was going north because it was on the east track; that as he pulled across Kingshighway, he realized then that the street car was going south; that at the time he could not make a stop to back up; that if he had,

he would have got into a jam, and he attempted to pull across, and as he pulled across the east track the street car struck his left rear fender about three and a half feet from the rear of the automobile; that his machine was knocked over the curb onto the sidewalk; that he heard no signals from the street car whatever; that there was no object between him and the street car to prevent him seeing the car or to prevent the motorman of the street car seeing the machine as he went across Kingshighway; that the street car ran beyond the point of collision about a length and a half of itself before it stopped; that before the collision he did not know that defendant was running cars south on the northbound track on Kingshighway; that he stopped when he made his turn at Berthold; that after he made his stop, he ran east at the rate of about eight to ten miles per hour; that when he stopped, he glanced both ways; that when he looked north he saw the street car; that it was only a short space of time that he was standing, but that he viewed the street car as he was glancing each way; that the street car was up Kingshighway in the neighborhood of probably one hundred feet; that it might have been more or less; that after he first saw the street car, realizing it was on the east track, he did not give too definite a note to it because he did not think it was coming south, but that as he almost approached the east tracks, then he realized the street car was going south and he was then a distance that he could not stop, and back up, so that he had to go across the track; that as he reached across the east track the street car struck the rear of his machine; that it was very light that night; that the streets were lit up at that time; that he was using his judgment that the street car was going north; that he could not say that he saw the headlight on the street car; that he glanced at the car on the east track; that what gave him the view of the tracks was the streets being lit up, and not the light of the street car; that after he made the look at Berthold and saw the street car, taking for granted it was going north, he did not pay too much attention to the street car; that at the time he was coming across, he was glancing his eyes both ways; that as he got near the east track, he realized the street car was coming south; that he was then possibly ten or fifteen feet from the east track, somewhere in that neighborhood; that it might not have been that much; that he could not say how many feet the street car was from him when he realized it was coming south, but that he realized that at the speed he was going, he could not stop the car far enough from the street car to prevent it from hitting him, so that he tried to pick up speed and get across; that he had picked up speed to possibly in the neighborhood of fifteen miles per hour at the time his automobile was struck.

Charles Hagerhorst, testifying for plaintiff, said that on August 10, 1923, about 8:15 in the evening, he was driving an automobile

on Berthold Avenue; that his automobile was facing the street car tracks; that his automobile was stopping at Kingshighway for a boulevard stop; that he noticed plaintiff's automobile making the turn; that the street car was about 150 or 200 feet north, possibly, coming south on the east track when he first saw the automobile making the turn; that the street car was running about twenty-five miles per hour—full speed; that when it hit the automobile, all he could see was the automobile turning up on the sidewalk; that the street car struck the left side of the rear end of the automobile; that the street car ran about three car lengths, possibly eighty or ninety feet, after the collision before it stopped; that there was some traffic—automobiles—on Kingshighway; that the street car was going at full speed, possibly twenty-five miles an hour, when he first saw it, and that when the collision occurred, it was still going at full speed; that it did not slacken its speed at all; that it was running on the wrong track to his knowledge; that it was going south on the east track; that the headlight was burning.

It was shown, on behalf of the plaintiff, that the street car running at fifteen miles per hour could have been stopped with safety to the passengers in a distance of thirty-five feet; that running at twenty miles per hour, it could have been stopped in a distance of fifty-five feet; and that running at twenty-five miles per hour, it could have been stopped in a distance of seventy-five feet.

James A. Hinton, testifying for the defendant, said that he was the motorman on the street car that collided with plaintiff's automobile; that the street car was a dinky car, having a controller box on the platform at each end of the car, so that the car could be run in either direction without turning it around; that as he approached Berthold Avenue he did not see plaintiff's automobile; that when he first saw the automobile, it was over to his right; that as he approached the point of collision, his car was moving at about eighteen, maybe twenty, miles per hour; that he could have seen the automobile approaching the track at any point from the west side of Kingshighway if he had looked; that when he first saw the plaintiff's automobile, it was in front of him, kind of to the right, on the west track; that the automobile was about nine feet in front of him when he first saw it; that going at the rate of fifteen miles per hour, the street car could have been stopped with safety to the passengers in a distance of twenty-five feet; that going at the rate of twenty miles per hour, it could have been stopped in a distance of forty feet; that going at the rate of twenty-five miles per hour, it could have been stopped in a distance of fifty feet.

Anthony Brawley, testifying for the defendant, said that he was the conductor on the street car which collided with plaintiff's automobile; that the collision turned the automobile around and set the

rear wheels on the sidewalk; that when the street car stopped after the collision, the rear end of it was about fifteen feet south of where it struck the automobile; that the street car was about thirty feet long.

The petition charges negligence on the part of the defendant (1) in the violation of the vigilant watch ordinance, (2) in the violation of the speed ordinance, and (3) in the violation of the humanitarian rule. The answer is a general denial, coupled with a plea of contributory negligence.

The vigilant watch ordinance requires that the motorman in charge of any street car shall keep vigilant watch for all vehicles and persons on foot, either on the track or moving towards it, and upon the first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible.

The speed ordinance requires that no street car shall be drawn or propelled at a speed greater than the rate of fifteen miles per hour in that part of the city where the collision in this case occurred.

The assignment of negligence relative to the violation of the humanitarian rule was withdrawn from the jury by an instruction given at the request of the defendant, and the cause was submitted to the jury under the assignments relative to the violation of the vigilant watch and speed ordinances.

The defendant assigns reversible errors here (1) upon the refusal of its instruction in the nature of a demurrer to the evidence, (2) upon the refusal of its instruction withdrawing from the jury the assignment of negligence relative to the violation of the vigilant watch ordinance, and (3) upon the refusal of its instruction withdrawing from the jury the assignment of negligence relative to the violation of the speed ordinance.

The defendant insists, as the sole ground for these assignments of errors, that the evidence shows the plaintiff guilty of contributory negligence as a matter of law. Defendant urges in argument that the plaintiff stopped his automobile on the west side of Kingshighway at Berthold Avenue, and looked north and saw the street car on the northbound track, and that he was guilty of negligence as a matter of law in blindly assuming that the street car was moving north and in failing to look a second time and discover that the car was moving south, until he had reached the danger zone. We do not think the evidence shows that plaintiff blindly assumed that the street car was going north. The evidence shows that the plaintiff, before proceeding to cross Kingshighway in making his left turn, stopped his automobile and looked in both directions for vehicular traffic, as a prudent person would do. He saw the street car on the northbound track. He was deceived and misled by the fact that the car was on the northbound track, and being so deceived and mis-

led, he did not observe the car as closely as he would otherwise have done, and thereby misjudged its movement. The defendant places much reliance on the fact that the headlight on the street car was burning, and argues that if the plaintiff had been diligent he would have seen the headlight and would have known that the street car was moving south. The plaintiff says he did not observe the headlight, if it was burning. The headlight was not the only light on the street. The street lights were burning. There were lights inside the street car. There were other automobiles with headlights on the street. In the midst of the reflection of all these lights the plaintiff was endeavoring to make a precarious left turn. He had to watch for southbound automobile traffic on the west side of the street, southbound street car traffic on the southbound track, northbound automobile traffic on the west side of the tracks and also on the east side of the tracks, and northbound street car traffic on the northbound track. He also had to watch in front of him, and attend to the guiding and operation of his automobile. The street car which collided with his automobile, was running south on a northbound track, at an excessive and unlawful rate of speed, approaching an intersection, in the nighttime, on a much traveled boulevard, in a populous city, with practically no watch being kept by the motorman for persons and vehicles approaching the track. We are unwilling to convict the plaintiff of contributory negligence as a matter of law because he was not sufficiently wary and alert to avoid this dangerous trap created solely by the gross negligence of the defendant.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.